IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

  v.                          CRIMINAL NO. 1:15CR56
                                      (Judge Keeley)

**DONALD R. JORDAN,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION TO WITHDRAW PRO SE MOTIONS [DKT. NO. 52], DENYING
DEFENDANT'S MOTION TO DISMISS INDICTMENT [DKT. NO. 50],
AND DENYING DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 51]**

On July 25, 2016, the defendant, Donald R. Jordan ("Jordan"), through counsel, filed two pro se motions asking the Court to dismiss the indictment against him and also to suppress certain evidence seized prior to his arrest (dkt. no. 35). The Court ordered the government to respond to the motions (dkt. no. 44), which it did on July 29, 2016 (dkt. no. 47). During the final pretrial conference conducted on August 2, 2016, however, Jordan filed a motion to withdraw those pro se motions (dkt. no. 52) and to replace them with two new pro se motions (dkt. nos. 50 and 51). The two new pro se motions again seek dismissal of the indictment against him and suppression of certain evidence seized prior to his arrest, but also include additional legal support not provided in the withdrawn motions. For good cause, the Court **GRANTS** Jordan's motion to withdraw the two pro se motions filed on July 25, 2016 (dkt. no. 35), and **ORDERS** the filing of his two new pro se motions.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO WITHDRAW PRO SE MOTIONS [DKT. NO. 52], DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT [DKT. NO. 50], AND DENYING DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 51]**

**I. JORDAN'S MOTION TO DISMISS INDICTMENT [DKT. NO. 50]**

Jordan claims that he was not given a trial within 180 days of his filing of his motion on Interstate Agreement on Detainers on February 4, 2016 (dkt. no. 7). According to Jordan, at the April 14, 2016 final pre-trial conference, the Court stated that there were two trial dates open to reschedule the trial, one in June and one in July. Ultimately, due to scheduling conflicts, the parties agreed to a new trial date of August 9, 2016, which is 187 days from Jordan's February 4, 2016, filing of his motion on Interstate Agreement on Detainers.

Article III (a) of the Interstate Agreement on Detainers states in relevant part:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint: ***Provided*, That, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.**

18 U.S.C. App. 2 (emphasis added).

**USA v. JORDAN**                                                              **1:15CR56**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION TO WITHDRAW PRO SE MOTIONS [DKT. NO. 52], DENYING
DEFENDANT'S MOTION TO DISMISS INDICTMENT [DKT. NO. 50],
AND DENYING DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 51]**

---

Here, the Court granted the government's motion to continue the trial because an essential witness for the government, a Secret Service agent, was unavailable on the scheduled trial date of April 18, 2016. The government's motion proposed two new dates in August and, although the Court attempted to schedule it earlier, no dates satisfactory to both parties and the Court were available until August 9, 2016. Importantly, Jordan did not oppose the motion or the new date when the trial was rescheduled.

In his newly filed motion, Jordan claims that, "due to such a delay, [he] was forced to adjust his defense and pre-trial practice, because much time was wasted, defenses are no longer available" (dkt. no. 50). In addition, he claims that his investigator sought out two defense witnesses in June, 2016, but was unable to locate them because they had moved from West Virginia to Kentucky.

Jordan's argument is unavailing. He utterly fails to provide any support for his contention that he was prejudiced because of the seven day delay, nor does he indicate how his defense and pretrial practice had to be adjusted by such a short delay, or what defenses were no longer available as a consequence. Finally, the fact that his witnesses may have moved in June, and are therefore

USA v. JORDAN                                                          1:15CR56

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION TO WITHDRAW PRO SE MOTIONS [DKT. NO. 52], DENYING
DEFENDANT'S MOTION TO DISMISS INDICTMENT [DKT. NO. 50],
AND DENYING DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 51]**

more difficult to locate, is not relevant because a trial date within the 180 normal time limit would not have altered that fact.

Here, Jordan's trial will begin a mere seven days past the normal 180 day limit, and such a short extension was not only necessary, it was clearly reasonable and in compliance with the Interstate Agreement on Detainers. Accordingly, the trial date does not violate the Interstate Agreement on Detainers, and the Court **DENIES** Jordan's motion to dismiss the indictment (dkt. no. 50).

## II. JORDAN'S MOTION TO SUPPRESS

Jordan has moved to suppress as evidence the Nike duffle bag seized from behind the home of "Anthony Ziminez [sic]," claiming that the police illegally searched and seized the bag. In support, he argues that he placed the duffle bag at that location, never abandoned it, never denied ownership of it, and therefore had an expectation of privacy as to its contents. He further argues that the Clarksburg Police were aware of the bag and its location for four months prior to "coming in contact" with it.

Jordan's argument is lacks merit. The initial search of the bag was conducted by private actors independent of the Police. The police were summoned by those private actors only after they discovered the contents of the bag, and only then did police search

4

and seize the bag. See, e.g., United States v. Jarrett, 338 F.3d 339, 344 (4th Cir. 2003) ("[E]vidence secured by private searches, even if illegal, need not be excluded from a criminal trial.") (quotations omitted). Jordan's contention that he did not abandon the bag does not change this fact or the analysis here. Moreover, because the evidence was discovered only after Jordan's arrest and pre-trial detention, it is likely that the search and seizure of the duffle bag would come within the plain view and inventory search exceptions to the Fourth Amendment's warrant requirement. See S. Dakota v. Opperman, 428 U.S. 364, 374-76 (1976); United States v. Jackson, 131 F.3d 1105, 1108 (4th Cir. 1997) (noting that, if items "perceived to be contraband, stolen property, or incriminating in character" are in plain view, their seizure does not violate the Fourth Amendment).

Accordingly, the Court **DENIES** Jordan's motion to suppress the duffle bag as evidence (dkt. no. 51).

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: August 4, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE